## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CRYSTAL GOUGIS**, | ) | |
| | ) | |
| *Plaintiff*, | ) | **CIVIL ACTION NO**. |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **SHELL OIL COMPANY**, | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**NOW INTO COURT**, Plaintiff, Crystal Gougis ("Plaintiff" or "Ms. Gougis"), by and through undersigned counsel, hereby submits her Complaint against Shell Oil Company ("Defendant" or "Shell").

## INTRODUCTION

1.

Plaintiff Crystal Gougis, by and through her attorney, brings this action against Shell for violations of the Equal Pay Act of 1963, 29 U.S.C. §§ 206(d), et seq. ("EPA"), the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"); Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and the Lilly Ledbetter Fair Pay Act of 2009, violations of 42 U.S.C. §§ 2000e et seq. and violations of 42 U.S.C. §§ 1981 et seq. ("Title VII").

1

**JURISDICTION AND VENUE**

2.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, which confers

original jurisdiction upon this Court for actions arising under the laws of the United States, and

pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court

in a civil action to recover damages or to secure equitable relief under (i) under any Act of Congress

providing for the protection of civil rights; (ii) the EPA, (iii) the FLSA, (iv) the ADA, (v) EPSLA

and (vi) Title VII. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1367,

which confers supplemental jurisdiction upon this Court for all other claims that are so related to

claims in the action within original jurisdiction that they form part of the same case or controversy

under Article III of the United States Constitution.

3.

Defendant is an "employer" engaged in an industry affecting commerce as defined by 42

U.S.C. § 2000e(b).

4.

This court has personal jurisdiction over Shell. Defendant Shell is a for-profit corporation

doing business in Louisiana. At all times relevant, Shell operated its business within the State of

Louisiana.

5.

Defendant operates its business within the Eastern District of Louisiana. All actions and

inactions by Defendants alleged herein occurred within the Eastern District of Louisiana. Venue

in this district is proper for the Defendant pursuant to 28 U.S.C. §1391(b) & (c).

**PARTIES**

6.

Plaintiff Crystal Gougis is an African American female residing in Gretna, Louisiana. At all relevant times, Plaintiff is and has been a resident of the State of Louisiana and met the definition of an "employee" under all applicable statutes.

7.

Upon information and belief, Shell is a corporation engaged in the operation of a number of large-scale plants that produce petrochemicals and products such as acetone, aromatics, ethylene oxide, ethylene glycols, alkenes, nonene, phenol, polyethylene, polyols, and solvents. At all relevant times, Shell has met the definition of an "employer" under all applicable statutes.

**FACTS**

8.

Shell is a privately owned petrochemical corporation that employees about 18,000 individuals across the United States, including Louisiana.

9.

The Defendant operates a branch of its corporation at 15536 River Road, Norco, LA 70079.

10.

On or about June 11, 2012, Plaintiff began her employment with Shell as an Operator at the Norco Energy Park.

11.

Even though Plaintiff was recognized by the company for her achievements, she has been the victim of continuous harassment, retaliation, racial discrimination and sex discrimination

since about 2016 to the present.

12.

Since Plaintiff began her employment with Shell, she maintained aspirations in growing withing the company.

13.

One deciding factor in growing as an Operator into a larger role within Shell is based on Plaintiff's yearly performance reviews.

14.

Plaintiff worked her first four years for Shell without receiving an evaluation.

15.

On or about March 15, 2016, Plaintiff met with Supervisor Nelson, Alex Zeringue and Human Resources representative Mary Snyder. Alex and Mary are both Caucasian. Plaintiff scheduled the meeting to complain about never receiving a yearly performance review since the commencement her employment.

16.

During the meeting, Mr. Zeringue informed Plaintiff that her evaluation was completed and he was looking at the signed evaluation during the meeting. Plaintiff requested to see the evaluation or to obtain a copy for her to review. Her requests were denied at that moment, but Mr. Zeringue assured Plaintiff that he would provide a copy soon and Ms. Snyder affirmed.

17.

After about a month without receiving her evaluation as discussed by Mr. Zeringue Plaintiff scheduled a meeting with Refining West Production Supervisor Jack Holden, Ms. Snyder, and Union representative Brian Naquin to discuss not receiving her evaluation on or

about April 16, 2016.

18.

As Plaintiff was discussing the contents from March 15, 2016, Ms. Snyder interrupted Plaintiff and declared she did not hear Plaintiff request a copy of her evaluation during the meeting. Plaintiff asked Ms. Snyder to repeat it and Ms. Snyder stated, "Crystal, I did not hear you ask Alex for a copy of your evaluation."

19.

Plaintiff revealed an email received prior to the meeting from Mr. Zeringue stating, "Crystal here's a copy of the evaluation that was discussed during the meeting with Mary Snyder." Mr. Holden stated he will deal with Ms. Snyder's comments.

20.

About a month after the meeting, Ms. Snyder ceased working with Shell NORCO, and Plaintiff experienced retaliation and discrimination from Mr. Zeringue.

21.

Mr. Zeringue creates the schedule and has been manipulating it so Plaintiff would be responsible for an unreasonable workload with little to no assistance during her shifts.

22.

From that point on, Plaintiff was required to work on her projects alone without the assistance of others. Plaintiff had to lift heavy equipment alone, while Caucasian female employees received assistance.

23.

Newer employees are frequently assigned to work next to Plaintiff more than other Caucasian employees. However, those employees do not assist Plaintiff in her responsibilities.

Instead, Plaintiff is required to assist those employees in acclimating to their roles. Thus, adding more tasks to Plaintiff's existing unreasonable workload.

24.

Plaintiff experiences disparate treatment and is being isolated by management. Managers are telling employees to stay away from Plaintiff and witnesses have informed Plaintiff of the same.

25.

Plaintiff has heard employees speaking about the isolation when they are stating: "you have to stay away from that one or you will be human resourced." Some employees have come to Plaintiff and stated, "Crystal you are nothing like they say you are."

26.

On or about September 28, 2018, Plaintiff worked a twelve (12) hour shift and later discovered she was only paid for eleven (11) hours. About an hour into her shift, Plaintiff returned to her car to pick up a work monitor. After picking up the equipment, Plaintiff was seen by Manager PTL Kevin Duvic (Caucasian) and Manager PTL Keith Wilson (Caucasian) leaving her car.

27.

Plaintiff reported the pay discrepancy to upper management. Plaintiff was requested to meet immediately to discuss it with Mr. Schexnayder and Mr. Duvic. Plaintiff was questioned about why she did not receive her entire pay for the hours she worked. Plaintiff responded with, "I don't know, you tell me." Mr. Schexnayder continued asking Plaintiff the same question about why she didn't receive her pay. Plaintiff informed him that cameras stationed in the plant could corroborate her working the full twelve (12) hour shift.

28.

The questioning quickly escalated to harassment as Mr. Schexnayder began to harass and torment Plaintiff.  The harassment became unbearable for Plaintiff and she left the meeting after informing Mr. Schexnayder that she would discuss it with someone higher up within Shell.

29.

Subsequently, Plaintiff received her full pay for the twelve (12) hour shift. However, Mr. Schexnayder posted in Plaintiff's Personal Development Log, Plaintiff was insubordinate, disrespectful, and refused to comply with his questions. Mr. Schexnayder never acknowledged his harassment of the Plaintiff. Mr. Schexnayder never explained his questioning to Plaintiff nor did a manager, Mr. Duvic, admitted to seeing her during the day in question leaving her car an hour after her shift started.

30.

Plaintiff suffered mental anguish from Mr. Schexnayder's harassment.

31.

On or about June 17, 2019, Plaintiff emailed Mr. Holden and Human Resource representatives, Simone Haygood and Amy Wagner, to discuss the harassment and discrimination she has been suffering from.  Nearly six (6) months later, Plaintiff was finally able to speak with Human Resources and explain the discrimination she is suffering from. However, no resolution was provided.

32.

On or about August 19, 2019, Mr. Schexnayder and Mr. King made false allegations in Plaintiff's PD log and evaluation stating she had issues understanding how the Debutanizer analyzer AI5196 works.

33.

Plaintiff has helped assist management and operators with critical situations. The false allegation about not understanding how the analyzer operates is a clear sign of retaliation to discredit Plaintiff's potential advancement within Shell.

34.

In 2019, Plaintiff received her worst evaluation where she was in the lowest behavior placement needing significant supervision for her behavior.

35.

Plaintiff is purposefully being denied a fair and just evaluation which has prevented her from advancing with the company and prevented her from any increase in her salary.

36.

 In 2020, Plaintiff was assigned her new supervisor, Mr. Albert Smith, Jr., an African American male.

37.

Plaintiff received her best evaluation from Mr. Smith. Plaintiff received a perfect score on her evaluation from Mr. Smith. However, she was scored as a Medium level for technical effectiveness and moderate behaviors.

38.

Plaintiff asked Mr. Smith why she was not scored in the category her score reflected. Plaintiff was informed that the evaluations are conducted in collaboration with managers, Dale Tamplain, Nelson Zeringue, Dane Schexnayder, and Fredrick King.

39.

In 2021, Plaintiff was still supervised by Mr. Smith but was primarily working under the supervision of Mr. Tamplain.

40.

Plaintiff was given a medium and moderate score on her performance review for the year. However, the comments on her evaluation reflected a high-level employee with minimum supervision needed for her behavior.

41.

Plaintiff questioned Mr. Tamplain why she received a medium level score when the previous year she had a high-level score. Mr. Tamplain refused to give her any feedback for her 2021 evaluation and instead stated, "last year's score must have had an error on it."

42.

Plaintiff was denied any resolution for her inaccurate evaluation score. Plaintiff spoke with Refining West Supervisor, Jeffrey Gribnua (Caucasian male), to discuss discrimination she is suffering from. After hearing Plaintiff's complaints, Mr. Gribnua advised Plaintiff to reach out to corporate.

43.

Plaintiff requested to file a grievance with USW 13-750 Union President Eric Roy (Caucasian male) and Donald Borne (Caucasian male) about discrimination and harassment she is subjected to on or about March 23, 2022. Mr. Roy and Mr. Borne failed to submit the grievance and Plaintiff was not notified until sometime later that the grievance was never submitted.

44.

On or about February 10, 2020, Plaintiff reported concerns about social bias between

9

males and female coworkers and disparage treatment.

45.

Plaintiff suffered from extreme headaches and anxiety for fear of management covering up safety concerns and harassment.

46.

On or about January 1, 2021, a new operator, Louis Laishe (Caucasian male), was tasked to swap HCN valves to off Spec. All field operators went out to assist him including Production Team Lead Albert Smith (African American). The field operators and Mr. Smith were not able to swap the valves. Plaintiff informed the Main Frac console operator Michael McLaney (Caucasian) that the valves would not swap until the valves were reset.

47.

Plaintiff's concerns were ignored. Mr. Smith called Production Specialist Fredrick King (Caucasian male) to see if the valve was reset. The valves were not reset and after Mr. Smith finished the call he became irate with Mr. Laishe and Plaintiff. Mr. Smith began shouting profanity to Mr. Laishe and Plaintiff and face demanding them to go inside.

48.

Plaintiff returned to the console and helped Mr. McLaney reset the HCN off spec valve. After the reset, Mr. Smith and Main Frac console operators were successful in swapping the valves.

49.

Shortly after the valves were swapped, Plaintiff overheard R&R field operator, Camron Davis, and Main Frac console operator, Kyle Stieb, devising a plan to say there was a bad actuator causing the issue.

50.

Mr. Davis and Mr. Stieb wanted to take away Plaintiff's accomplishment in resetting the valve to allow the valve to be swapped.

51.

Plaintiff was intending to report this to upper management but decided not to after overhearing fellow operators stating they were not going to say anything because someone could get fired.

52.

Plaintiff suffered from extreme headaches and anxiety directly after the incident and called out for the next few days. Plaintiff was not asked to provide a doctor's note when she returned and discovered she was paid for the days she missed.

53.

On or about February 16, 2021, Plaintiff emailed the Defendant's Vice President, Rhoman Hardy. The email consisted of the discrimination Plaintiff suffers due to being an African American female operator.

54.

On or about June 27, 2021, Plaintiff requested assistance in breaking the flange on a 4-bolt piece piping while working on the Caustic Pump P7147.

55.

PTL Jason Torres instructed Plaintiff to go through the pressure gauge to decontaminate the equipment.

56.

These instructions were a safety hazard and Plaintiff warned Mr. Torres of this. Later

after the situation was resolved, Plaintiff attempted to discuss the hazardous instructions with

Mr. Torres. Mr. Torres refused to acknowledge Plaintiff's concerns. Mr. Torres instead reported

Plaintiff to her supervisor, Albert Smith.

57.

On or about August 10, 2021, Plaintiff suffered from depression after Mr. King

disrespected and harassed Plaintiff after voicing her concerns about unsafe conditions.

58.

On or about August 10, 2021, the RCCU unit of Shell Norco was going through a startup.

Plaintiff was assigned to this task with Derrick Adam, James Acosta, and Subject Matter Expert

William Vasques.

59.

Mr. Vasques suggested that the Plaintiff add heat to the column to help boil out the feed

overhead. Plaintiff informed Mr. Vasques and console operators the columns were receiving too

much heat for the feed rates. Plaintiff's concerns were ignored.

60.

Mr. Vasques informed management and engineers that there was an issue lowering the

level of the Gasoline Stabilizer. Fearful of the pump cavitating, management suggested to close

the discharge of the Gasoline Stabilizer pump. Plaintiff informed management the safety of

closing the discharge of a running pump.

61.

Plaintiff informed management that the pump could not cavitate due to the high levels

and sufficient head pressure in the column. Plaintiff informed them that the high levels of heat is

causing the casing of the pump to gas up instead and the heat levels need to be reduced.

Plaintiff's concerns were again, ignored.

62.

The levels went into high alarm. Mr. King finally listened to Plaintiff's concerns and informed Mr. Vasques to reduce the heat in the column.

63.

Mr. Vasques instructed Plaintiff to cut heat from the columns. Plaintiff voiced her concern to not cut the heat too fast. Mr. Vasques ignored her concerns and instructed Plaintiff to cut the heat roughly around 10 degrees.

64.

The heat being reduced too quickly caused the unit to trip on high differential pressure. Mr. King returned to the console and screamed profane words at the Plaintiff implying that she was the cause of the tripped unit.

65.

Many members of upper management witnessed the event, and no one spoke up on Plaintiff's behalf. Plaintiff grew distrust and depression from being able to speak her concerns in regards to safety concerns.

66.

Plaintiff reported the incident to Mr. Zeringue and was told he would take care of the incident.

67.

Plaintiff later discovered the incident was kept quiet and documented as the instrumentation failed. Plaintiff's harassment and disrespect by Mr. King was not addressed.

68.

13

Plaintiff has complained about safety issues to upper management and her concerns were disregarded that have led to potential threats to the environment, community, and equipment.

69.

On or about November 5, 2021, during the RCCU startup, Plaintiff reported a high level and high pressure of C3 overwhelmed PV 505 due to high level in the Depropanizer Column and outlet valves being blocked in during start up.

70.

Managers, Mr. King, Mr. Schexnayder, and Dale Tamplain, refused to heed Plaintiff's advice. Mr. Schexnayder went to verify the levels himself and falsely stated the level was false and we shouldn't have a problem. Plaintiff voiced her extreme concerns and advised to consider what she saw during sensory rounds.

71.

Management again ignored Plaintiff's advice and left for the night, with the exception of Mr. King.

72.

Plaintiff begged fellow operators Adam Plaisance and Kevin Teekel to exit the column because she knew the level was real.

73.

Plaintiff had to plead with Mr. King to open the valve to relieve the high level and pressure. It was later revealed that Plaintiff's concerns were correct.

74.

If Plaintiff had not gone above and beyond there could have been a potential plant explosion that would have endangered the environment, community, and equipment.

14

75.

The causes for this particular incident and others have been left out in reports to avoid accountability. Plaintiff has experienced retaliation and discrimination for her knowledge and actions during these incidents.

76.

On or about November 26, 2021, Gas Plant Console Operator, Derrick Adams, lost side reflux to the RA Column. Plaintiff offered a suggestion to resolve the issue. Mr. Adams refused Plaintiff's suggestion. Mr. Adams was acting on Mr. Schexnayder orders attempting to resolve the issue. The issues were not resolved, and Plaintiff had to intervene to mitigate the issues.

77.

On or about November 28, 2021, Plaintiff emailed management about the incident. Mr. Schexnayder lied and attempted to cover up the incident and his negligence.

78.

Defendants have consistently changed reports of incidents to withhold the truth of these hazardous incidents. The reports fail to acknowledge Plaintiff's assistance in preventing hazardous incidents and instead degrade Plaintiff's character in performance evaluation reports.

79.

Plaintiff has never been given the opportunity to work on special assignments and projects by her supervisors. If a person works on special assignments and projects, they are eligible to receive a 10% increase in their pay.

80.

Caucasian and male employees who are less qualified than Plaintiff are frequently assigned to work special assignments and projects. Plaintiff has suffered retaliation and

discrimination due to her ethnicity, race, and sex by not being allowed any special assignments nor projects even though she is qualified.

81.

On or about April 22, 2022, Plaintiff emailed Shell HR Operations HR Manager Simon Haygood, Brian Gelb, and Gretchen Watkins. Plaintiff reported disparate treatment, racial discrimination, retaliation, and retaliation. Plaintiff reported Nelson Zeringue, Fredrick King, and Dane Schexnayder as the culprits.

82.

On or about April 28, 2022, Plaintiff was required to work an outage schedule where she was assigned to work alone taking out critical pumps and exchangers. Meanwhile, two Caucasian female operators were working with two men alongside to assist them. Plaintiff suffered from retaliation for reaching out to HR managers.

83.

On or about May 12, 2022, there was an issue with the Main Frac bottom and Slurry Constrains.

84.

Mr. Smith requested that the Plaintiff to investigate the matter. After investigating the matter, Plaintiff offered a suggestion to resolve the issue. Plaintiff's suggestion, again, was ignored.

85.

On or about June 11, 2022, the Main Frac continues to have slurry issues that are not properly addressed.

86.

On or about June 12, 2022, the Depropanizer Column was not controlling the pressure. Specialist Fred King had failed to help Console Operator Ryan Torres (Caucasian) mitigate the issue. Plaintiff reported her findings for the incident. However, Fred King falsified his report to state it was instead a cooling water fouling issue in the system.

<div align="center">87.</div>

On or about September 9, 2022, Plaintiff was experiencing severe chest pains and numbness in the entire right side of her body.

<div align="center">88.</div>

Plaintiff immediately pleaded for an ambulance to come but was refused and forced to see Senior OH nurse for Norco Tim Bush.

<div align="center">89.</div>

As soon as Plaintiff was seen by Mr. Bush, she immediately requested an ambulance. Mr. Bush refused to call for an ambulance and started his evaluation.

<div align="center">90.</div>

As Mr. Bush is conducting his evaluation, it is clear that Plaintiff is in severe pain. As Plaintiff pleads for Mr. Bush to call for an ambulance, he responds with, "an ambulance will take forty-five (45) minutes to come."

<div align="center">91.</div>

Plaintiff then continues to ask for an ambulance, and he denies it and reaffirms it will take forty-five (45) minutes for them to just arrive. Plaintiff then pleaded for someone in the company to drive her to the nearest hospital. Mr. Bush disregards her pleas.

92.

Plaintiff is left with no other alternative but to force herself to drive to the hospital due to her immediate need. Mr. Bush's notates the event stating, "very briefly mentioned calling an ambulance." Plaintiff was denied an ambulance and Mr. Bush showed no signs of sympathy nor provided assistance to Plaintiff at a time of emergency medical need.

93.

On or about November 11, 2022, Plaintiff filed a case with the Equal Employment Opportunities Commission ("EEOC").

94.

On or about March 16, 2023, Investigator Alexa Kozyrski was assigned to investigate claims made by Plaintiff.

95.

On or about May 26, 2023, Plaintiff emailed Mr. Albert Smith her concerns and inability to advance within the company.

96.

On or about June 8, 2023, Investigator Ms. Kozyrski spoke with Plaintiff to discuss her investigation. The investigation did not discuss Plaintiff's concerns. Plaintiff was again targeted and became overwhelmed with anxiety and was not able to continue the call.

97.

Plaintiff contacted Human Resources and spoke with Plant Manager Tammy Little and Jack Holden to discuss her concerns. Plaintiff informed them that she does not feel safe after witnessing the company covering up harassment, discrimination, targeting, and bullying.

98.

Plaintiff was overcome with tears and emotional distress. Plant Manager, Jack Holden, allowed Plaintiff to return home. Plant Manager Tammy Little called James Preston to initiate steps to switch Plaintiff to a different unit.

99.

On or about June 20, 2023, Plaintiff spoke with USW 13-750 Attorney Julie Richard, Union President Eric Roy, and Union Representative Johnnie Bonds. Plaintiff discussed her ongoing issues with the Defendant.

100.

On or about June 27, 2023, requested USW 13-750 Union President Eric Roy and USW 13-750 Attorney Julie Ricard file a grievance with her complaints. Plaintiff sent an email detailing her concerns she would like to be addressed in the grievance against the defendant.

101.

On or about June 28, 2023, Plaintiff spoke to USW 13-750 Union President Eric Roy to ensure the grievance is filed correctly. Plaintiff informed Mr. Roy that she wants to review the grievance before it is filed.

102.

On or about June 29, 2023, Plaintiff was informed that her grievance was filed. Plaintiff was never given a chance to review the grievance against her demands. Plaintiff could not move forward with the grievance report as she could not determine its authenticity were in alignment with her complaints.

103.

On or about July 24, 2023, Plaintiff attended a mandatory meeting conducted by Human

Resources James Preston and Human Resources Alexa Kozyrski to discuss her complaints and

Investigator Alexa Kozyrski development plan. The meeting was held with Mr. Gribnua, Mr.

Zeringue, and Mr. Albert Smith. The meeting failed to state any of Plaintiff's concerns and

instead focused on covering up whistleblowing issues that Plaintiff can expose.

## **CAUSES OF ACTION**

### **AS FOR THE FIRST CAUSE OF ACTION AGAINST DEFENDANT SHELL FOR A VIOLATION OF**
#### **Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, (Racial Discrimination)**

104.

Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if

fully set forth herein.

105.

Defendant has engaged in intentional racial discrimination in the terms and conditions of

the Plaintiff's employment, including, but not limited to, the Plaintiff's constructive termination

in violation of the Civil Rights Act of 1964.

106.

Defendants' conduct violates Title VII.

107.

By the conduct described above, Defendant intentionally deprived the

Plaintiff of the same rights as are enjoyed by other citizens to the creation, performance,

enjoyment, and all benefits and privileges, of their employment relationship with Defendant, in

violation of 42 U.S.C. § 1981.

108.

As a result of defendant's discrimination in violation of Section 1981, the Plaintiff has

been denied employment advancement opportunities providing additional compensation, thereby entitling her to injunctive and equitable monetary relief; and have suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of defendant's actions, thereby entitling her to compensatory damages.

109.

In its discriminatory actions as alleged above, Shell has acted with malice or reckless indifference to the rights of the above-named African American Plaintiff and, thereby entitling her to an award of punitive damages.

110.

Plaintiff's requests for relief are set forth below.

### AS FOR THE SECOND CAUSE OF ACTION AGAINST DEFENDANT SHELL FOR A VIOLATION OF
**Title VII of the Civil rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, (Discrimination in Pay)**

111.

Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

112.

Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

113.

The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., as Defendant Shell engaged in the practice of discrimination against Plaintiff.

114.

Defendant Shell intentionally discriminated against Plaintiff by subjecting her to discriminatory compensation, in violation of Title VII of the Civil Rights Act of 1964.

115.

Plaintiff's requests for relief are set forth below.

## AS AND FOR THE THIRD CAUSE OF ACTION AGAINST DEFENDANT SHELL FOR A VIOLATION OF
### The Equal Pay Act, 29 U.S.C. §§ 206(d) *et seq.*,
### (Discrimination in Pay)

116.

Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

117.

Defendant Shell discriminated against Plaintiff on the basis of sex by paying her lower compensation than it paid to male employees for equal work, the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions, in violation of the Equal Pay Act.

118.

Plaintiff's male predecessors and/or comparators held the exact same job, in the same establishment, performed equal work that required equal skill, effort, and responsibility, and the work was performed under the same conditions.

119.

The differential in pay between Plaintiff's and the male predecessors and/or comparators compensation was not due to seniority, merit, quantity or quality of production, or a factor other than sex. Instead, the differential in pay was due to Plaintiff's sex.

120.

Defendant Shell's actions were not done in good faith nor did it have any reasonable

grounds for believing that its acts or omissions were not a violation of the Equal Protection Act

121.

 Defendant Shell's actions were willful and lasted for the duration of the relevant time

periods.

122.

As a result, Plaintiff is entitled to liquidated damages.

123.

Defendant SHELL's foregoing conduct also constitutes a willful violation of the Equal

Pay Act within the meaning of 29 U.S.C. § 255(a), entitling Gougis to recover damages for

three (3) years pursuant to 29 U.S.C. § 255(a).

124.

Plaintiff's requests for relief are set forth below.

**<u>AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT
SHELL FOR A VIOLATION OF</u>
<u>The Equal Pay Act of 1963, 29 U.S.C. §§ 206, *et seq*.</u>
<u>(Retaliation)</u>**

125.

Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if

fully set forth herein.

126.

Plaintiff lodged complaints with Defendant Shell and the EEOC regarding the

discrimination to which she was subjected under the EPA, and as such engaged in protected

activity.

127.

Shell retaliated against Plaintiff by, in addition to other retaliatory behavior, further isolating her, constantly monitoring and criticizing her work, adding additional workload and new, draconian work conditions, subjecting her to threatening and abusive behavior, subjecting her to harassment, and in each case, as a result of her complaints of unlawful employment practices.

128.

The conduct alleged herein violates The Equal Pay Act of 1963, 29 U.S.C. §§ 206, *et seq.*

129.

Shell's actions were taken with malice or reckless indifference, entitling Plaintiff to recover punitive damages.

130.

Plaintiff's requests for relief are set forth below.

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANT SHELL FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*
(Retaliation)**

131.

Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

132.

Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

133.

Plaintiff lodged complaints with Defendant SHELL and the EEOC regarding the

discrimination to which she was subjected, and as such engaged in protected activity under

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

134.

Shell retaliated against Plaintiff by, in addition to other retaliatory behavior, further

isolating her, constantly monitoring and criticizing her work, adding additional workload and

new, draconian work conditions, subjecting her to threatening and abusive behavior, subjecting

her to harassment, and in each case, as a result of her complaints of unlawful employment

practices.

135.

The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §§ 2000e *et seq.*

136.

Shell's actions were taken with malice or reckless indifference, entitling Gougis to

recover punitive damages.

137.

Plaintiff's requests for relief are set forth below.

**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST
DEFENDANT SHELL FOR A VIOLATION OF
(Negligent Infliction of Emotional Distress)**

138.

Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if

fully set forth herein.

139.

Defendants' conduct as set forth herein was extreme and outrageous, resulting in severe

emotional distress to Gougis.

25

140.

Defendants' either desired to inflict severe emotional distress on Gougis, or knew that severe emotional distress would be certain or substantially certain to result from their conduct.

141.

Plaintiff's requests for relief are set forth below.

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANT SHELL FOR A VIOLATION OF
### (Intentional Infliction of Emotional Distress)

142.

Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

143.

Defendants' conduct as set forth herein was extreme and outrageous, resulting in severe emotional distress to Gougis.

144.

Defendants' either desired to inflict severe emotional distress on Gougis, or knew that severe emotional distress would be certain or substantially certain to result from their conduct.

145.

Plaintiff's requests for relief are set forth below.

## ADMINISTRATIVE PROCEDURES

146.

On or about November 29, 2022, the Plaintiff filed a timely Charge of Discrimination alleging racial discrimination with the Equal Employment Opportunity Commission ("EEOC"). (A true and accurate copy of EEOC Charge of Discrimination # 461-2022-02472, is attached

hereto as "Exhibit A")

147.

The Plaintiff has satisfied all statutory prerequisites for filing this action.

148.

On or about June 8, 2023, the EEOC issued a "Determination and Notice Of Rights" letter for her Charge of Discrimination. On or about June 10, 2023, Plaintiff received this letter. (A true and accurate copy of the EEOC "Dismissal and Notice of Rights" letter for EEOC Charge of Discrimination # 461-2022-02472, is attached hereto as "Exhibit B")

149.

To remedy the violations of the rights of the Plaintiff, plaintiff requests that the Court award her the relief prayed for below.

**PRAYER FOR RELIEF**

**WHEREFORE**, Crystal Gougis prays for the following relief:

1.

That the practices of Defendant Shell complained of herein be determined and adjudged to be in violation of the rights of Gougis under Title VII, the EPA; the FLSA;, the ADA, , EPSLA, Louisiana Revised Statute §§23:631-632, and  any other cause(s) of action that can be inferred from the facts set forth herein;

2.

All damages which Gougis has sustained as a result of Defendant Shell's conduct, including back pay, front pay, liquidated damages, punitive damages, general and special damages for lost compensation and job benefits she would have received but for Defendant Shell's unlawful

and retaliatory conduct;

3.

An award to Plaintiff of pre-judgment interest at the highest available rate, from and after the date of service of the initial complaint in this action on all owed wages from the date such wages were earned and due;

4.

An award representing Defendant Shell's share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

5.

Awarding Gougis her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

6.

An award to Plaintiff of compensatory and punitive damages against all Defendants, including but not limited to damages for physical injury, emotional distress, humiliation, embarrassment, and anguish;

7.

Post-judgment interest, as provided by law; and

8.

Such other and further legal and equitable relief as may be found appropriate and may be deemed just or equitable.

## JURY DEMAND

Mr. Davis demands a trial by jury of all issues do triable in this action.

Respectfully submitted this 5th day of September 2023.

<div style="margin-left: 40%;">

Respectfully Submitted,

**THE MINIAS LAW FIRM**

*/s/ Christopher A. MInias*
**Christopher A. Minias (#36230)**
1615 Poydras Street
Suite 900
New Orleans, LA 70112
Phone: (504) 777-7529
Fax: (504) 556-2866
Email: chris@miniaslaw.com

</div>

## SERVICE INFORMATION

Plaintiff mailed this day, September 5, 2023 by USPS certified mail Notice of Lawsuit and *Request to Waive Service of a Summons*, two copies of the *Waiver of the Service of the Summons Citation and Acceptance of Service* and a stamped self-addressed envelope to Defendant's agent: CT Corporation System 3867 Plaza Tower Drive Baton Rouge, LA 70816. Plaintiff also filed with this Court an unsigned summons.

<div style="text-align: center;">

*/s/ Christopher Minias*
CHRISTOPHER MINIAS

</div>